UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DERRICK VARGO, | |
| Plaintiff, | |
| v. | Civil Action No. 24-0010 (AHA) |
| BRYANT WILLIAMS, Capitol Police Officer, et al., | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 1

    I.      Plaintiff ......................................................................................................... 1

    II.    Plaintiff's Complaint ..................................................................................... 2

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT ............................................................................................................................... 4

    I.      The Court Should Dismiss Plaintiff's Claims Because Plaintiff Fails to
            Demonstrate Standing Against the Speaker of House. ........................................... 4

    II.    Any Common Law Tort Claims Lurking in Plaintiff's Complaint Fail. ............... 5

    III.   The Court Should Refrain from Creating a *Bivens* Remedy for Plaintiff's Claims,
            as the Claims Fail to Survive a Post-Egbert Analysis for Implied Remedies......... 7

          A.    Plaintiff's Claims Present a New *Bivens* Context.................................... 10

          B.    Special Factors Counsel Hesitation in Implying a *Bivens* Remedy Here. 12

    IV.   The Court Dismiss Plaintiff's Complaint Because Defendants Are Immune....... 21

          A.    Officer Williams Is Entitled to Qualified Immunity for Any *Bivens*
               Claims. .................................................................................................... 21

          B.    Speaker Johnson Is Entitled to Absolute Immunity for Any Claims Based
               on His Alleged Failure to Investigate. ..................................................... 23

CONCLUSION ............................................................................................................................ 26

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton*,
483 U.S. 635 (1987) ................................................................................................ 20

*\*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ................................................................................................ 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 3

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) ................................................................................................ 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................. 3

*Boule v. Egbert*,
998 F.3d 370 (9th Cir. 2021) ................................................................................... 11

*Bush v. Lucas*,
462 U.S. 367 (1983) ...................................................................................... 13, 14, 20

*Cantu v. Moody*,
933 F.3d 414 (9th Cir. 2019) ............................................................................ 12, 19

*Carlson v. Green*,
446 U.S. 14 (1980) .................................................................................................... 8

*Chappell v. Wallace*,
462 U.S. 296 (1983) .......................................................................................... 13, 14

*Clayton v. District of Columbia*,
931 F. Supp. 2d 192 (D.D.C. 2013) .......................................................................... 3

*Commodity Futures Trading Comm'n v. Nahas*,
738 F.2d 487 (D.C. Cir. 1984) .................................................................................. 3

*Corr. Servs. Corp. v. Malesko*,
534 U.S. 61 (2001) .............................................................................. 10, 13, 14, 17

*Cureton v. U.S. Marshal Serv.*,
322 F.Supp.2d 23 (D.D.C.2004) .............................................................................. 7

*Curran v. Holder*,
626 F. Supp. 2d 30 (D.D.C. 2009) ........................................................................... 3

*Daugherty v. Sheer*,
891 F.3d 386 (D.C. Cir. 2018) ............................................................................... 22

*Davis v. Passman*,
442 U.S. 228 (1979) .................................................................................................. 8

*\*District of Columbia v. Wesby*,
583 U.S. 48 (2018) .................................................................................................. 21

*Doe v. District of Columbia*,
796 F.3d 96 (D.C. Cir. 2015) ................................................................................................ 22

*Doe v. McMillan*,
412 U.S. 306 (1973) ................................................................................................... 23, 24

*Dukore v. District of Columbia*,
799 F.3d 1137 (D.C. Cir. 2015) ............................................................................................ 22

*Eastland v. U.S. Servicemen's Fund*,
421 U.S. 491 (1975) ................................................................................................... 23, 24

*Edwards v. Gizzi*,
Civ. A. No. 20-7371, 2022 WL 309393 (S.D.N.Y. Feb. 2, 2022) ............................................ 17

*\*Egbert v. Boule*,
596 U.S. 482 (2022) .............................................................................................................. 8

*FDIC v. Meyer*,
510 U.S. 471 (1994) ......................................................................................................... 3, 6

*Fed. Express Corp. v. Dep't of Com.*,
39 F.4th 756 (D.C. Cir. 2022) .............................................................................................. 19

*Graham v. Connor*,
490 U.S. 386 (1989) ............................................................................................................ 22

*Hernandez v. Mesa*,
140 S. Ct. 735 (2020) ........................................................................................ 8, 9, 10, 12

*Hui v. Castaneda*,
559 U. S. 799 (2010) ........................................................................................................... 16

*Jackson v. Bush*,
448 F. Supp. 2d 198 (D.D.C. 2006) ...................................................................................... 6

*Judicial Watch, Inc. v. Schiff*,
998 F.3d 989 (D.C. Cir. 2021) .............................................................................................. 24

*K.O. ex rel. E.O. v. Sessions*,
No. 20-5255, 2022 WL 3008025 (D.C. Cir. Jul. 29, 2022) ..................................................... 17

*Keener v. Congress*,
467 F.2d 952 (5th Cir. 1972) ................................................................................................. 5

*Kentucky v. Graham*,
473 U.S. 159 (1985) .............................................................................................................. 6

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .............................................................................................................. 3

*Liberation News Serv. v. Eastland*,
426 F.2d 1379 (2d Cir. 1970) ............................................................................................... 5

*Liff v. Off. of Inspector Gen. for Dep't of Lab.*,
881 F.3d 912 (D.C. Cir. 2018) .............................................................................................. 13

*Loumiet v. United States*,
948 F.3d 376 (D.C. Cir. 2020) ................................................................................... 20

*\*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................................... 4

*Malley v. Briggs*,
475 U.S. 335 (1986) ................................................................................................. 22

*\*McCarthy v. Pelosi*,
5 F.4th 34 (D.C. Cir. 2021) ...................................................................................... 23

*Nixon v. United States*,
506 U.S. 224 (1993) ................................................................................................. 25

*Ohome v. United States*,
Civ. A. No. 21-0368, 2021 WL 5771147 (N.D. Ga. Dec. 6, 2021) ........................... 17

*Oliva v. Nivar*,
973 F.3d 438 (5th Cir. 2020) ........................................................................ 11, 17, 19

*Oliveras v. Basile*,
440 F. Supp. 3d 365 (S.D.N.Y. 2020) ...................................................................... 17

*Papasan v. Allain*,
478 U.S. 265 (1986) ................................................................................................... 4

*Pearson v. Callahan*,
555 U.S. 223 (2009) ................................................................................................. 21

*Plevnik v. Sullivan*,
Civ. A. No. 23-0837 (CRC), 2023 WL 7279229 (D.D.C. Nov. 3, 2023) ..................... 6

*Robinson v. Pilgram*,
Civ. A. No. 20 -2965 (GMH), 2021 WL 5987016 (D.D.C. Dec. 17, 2021) ............... 11

*Snowden v. Henning*,
Civ. A. No. 19-1322, 2021 WL 806724 (S.D. Ill. Mar. 3, 2021) .............................. 18

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ..................................................................................................... 4

*Stevenson v. District of Columbia*,
639 F. Supp. 3d 117 (D.D.C. 2022) .......................................................................... 21

*Stoddard v. Wynn*,
68 F. Supp. 3d 104 (D.D.C. 2014) .............................................................................. 6

*Tri-State Hosp. Supply Corp. v. United States*,
341 F.3d 571 (D.C. Cir. 2003) ................................................................................... 6

*United States v. Brewster*,
408 U.S. 501 (1972) ................................................................................................. 23

*United States v. Mitchell*,
463 U.S. 206 (1983) ................................................................................................... 6

*United States v. Nordic Vill., Inc.*,
503 U.S. 30 (1992) ............................................................................................... 6

*United States v. Smith*,
499 U.S. 160 (1991) ............................................................................................. 6

*United States v. U.S. Dist. Ct.*,
407 U.S. 297 (1972) ............................................................................................ 11

*Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982) ............................................................................................. 4

*Welsh v. Hagler*,
83 F. Supp. 3d 212, 223 (D.D.C. 2015) .............................................................. 7

*\*Welsh v. Wisconsin*,
466 U.S. 740, 748 (1984) ................................................................................... 11

*Wilkie v. Robbins*,
551 U.S. 537, 562 (2007) ................................................................................... 20

*Young v. City of Council Bluffs*,
569 F. Supp. 3d 885, 895–96 (S.D. Iowa 2021) ................................................ 20

*Ziglar v. Abbasi*,
582 U.S. 120, 130 (2017) ..................................................................................... 8

**Statutes**

2 U.S.C. § 1909 .................................................................................................. 15

2 U.S.C. § 1909(c)(1) ........................................................................................ 16

8 U.S.C. § 1103(a)(2) ........................................................................................ 15

18 U.S.C. § 242 ................................................................................................. 17

28 U.S.C. § 2679(d)(1) ....................................................................................... 7

28 U.S.C. § 2680(h) .......................................................................................... 18

P.L. No. 96-170 ................................................................................................ 17

P.L. No. 104-317 .............................................................................................. 17

**Regulations**

8 C.F.R. § 287.10 .............................................................................................. 15

Defendants U.S. Capitol Police Officer Bryant Williams, Speaker James Michael Johnson, and the United States of America ("United States"), by and through the undersigned counsel, hereby submit this memorandum of points and authorities in support of their Motion to Dismiss Plaintiff Derrick Vargo's Complaint, ECF No. 1.

## INTRODUCTION

Plaintiff, a participant in the riot at the U.S. Capitol on January 6, 2021, brings this action, alleging violations of the First and Fourth Amendments.  Put simply, Plaintiff's claims fail.  First, Plaintiff does not demonstrate standing against Speaker Johnson because, among other reasons, he fails to allege that the Speaker caused any purported injury and that the Court could redress any purported injury as to Speaker Johnson.  Second, the United States has not waived sovereign immunity for any common law torts.  Third, the Court should not expand Bivens into the novel context of January 6, 2021.  Lastly, Officer Williams is immune under the doctrine of qualified immunity, and Speaker Johnson is immune under the Speech or Debate Clause.

Therefore, for the reasons discussed below, the Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction or for failure to state a claim.

## BACKGROUND

### I.    <u>Plaintiff</u>

On January 6, 2021, Plaintiff took a bus from Ohio to Washington, DC to listen to then President Trump speak at a rally, but he "was not in D.C. to protest anything."  Compl. (ECF No. 1) ¶¶ 4, 5.  Following President's Trump speech, Defendant joined the crowd who marched upon the Capitol.  *Id.* ¶¶ 9, 10.  While marching to the Capitol, Plaintiff purchased a Trump Flag.  *Id.* ¶ 11.

Once at the Capitol, Plaintiff decided to crawl up the balustrades on the Northwest staircase of the Capitol because he saw someone else climbing upon the structures of the Capitol grounds

and thought "that's awesome!" *Id.* ¶¶ 11–15. Upon reaching the top of the stairs, via the outside of the balustrade, Plaintiff encountered several officers, including Officer Williams, blocking entry into the Capitol. *Id.* ¶¶ 17, 18. Vargo then made "his way towards a secure position away from the police," to "wave his flag." *Id.* ¶ 20. Officers then employed pepper spray allegedly "with no regard for his life." *Id.* ¶¶ 21–24. Plaintiff "began reversing his course and taking two large steps back towards the stairs he came from." *Id.* ¶ 30. Officer Williams then contacted Plaintiff, who then fell off the Capitol building. *Id.* ¶ 32. "When [Plaintiff] hit the ground, he blacked out," *id.* ¶ 43, and "[w]hen [Plaintiff] regained consciousness, he was in an ambulance that took him to a hospital." *Id.* ¶ 44. As a result, Plaintiff "severely injured his back and foot. . . . Due to the injuries, [Plaintiff] required surgery and other medical treatment, he experienced pain and suffering that will last for the rest of his life." *Id.* ¶ 40.

## II.    Plaintiff's Complaint

On January 2, 2024, Plaintiff filed the Complaint. *Id.* Plaintiff names Officer Bryant in his official and individual capacity and Speaker Johnson in his official capacity. *Id.* at Caption. Plaintiff demands:

(1)    "an order from the Court declaring that Officer Bryant Williams attempted to murder him in retaliation for exercising his First Amendment right to wave a flag with a political message, which is clearly political speech and protected," *id.* at Request for Relief ¶ A;

(2)    "an Order form [sic] the Court that Officer Bryant violated his Fourth Amendment right by using excessive force against him," *id.* at Request for Relief ¶ B;

(3)    "the Court to Order Defendant [Speaker] Mike Johnson to immediately begin an investigation to the police brutality that occurred on January 6, including the attempted murder of [Plaintiff]," *id.* at Request for Relief ¶ C.

Plaintiff seeks unspecified "damages for this [sic] injuries, including for pain and suffering, as well as punitive damage from Defendant Bryan [sic] Williams." *Id.* at Request for Relief ¶ D.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(b)(1) requires dismissal of claims where the Court "lack[s] jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "Rule 12(b)(1) presents a threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "A federal court presumptively lacks jurisdiction in a proceeding until a party demonstrates that jurisdiction exists." *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 n.9 (D.C. Cir. 1984) (emphasis added); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction."). "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 678. However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the

complaint, and whether it sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## ARGUMENT

**I.     The Court Should Dismiss Plaintiff's Claims Because Plaintiff Fails to Demonstrate Standing Against the Speaker of House.**

"The term 'standing' subsumes a blend of constitutional requirements and prudential considerations[.]" *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982).  Courts now uniformly recognize that the constitutional minimum for standing contains three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical . . .

> Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.

> Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).  "[T]he party invoking federal jurisdiction bears the burden of establishing its existence," specifically to include these requirements for standing.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).  Here, Plaintiff cannot establish the second and third prongs.

Plaintiff fails to demonstrate Speaker Johnson caused his injuries.  While "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" *Lujan*, 504 U.S. at 561, "an allegation of injury . . . that is too speculative will not suffice to invoke the federal judicial power."  *United Transp. Union v. Interstate Com. Comm'n*, 891 F.2d 908, 911 (D.C. Cir. 1989) (internal quotation marks omitted).  Plaintiff does not allege any action by the

Speaker of the House that caused Plaintiff's injuries on January 6, 2021. *See generally* Compl. (ECF No. 1). Rather, Plaintiff asserts "[n]either the members of the oversight committees nor the Speaker of the House have performed their duty of conducting oversight over [Officer] Williams for pushing [Plaintiff] off of a ledge in an act of attempting murder of an American citizen." Compl. (ECF No. 1) ¶ 72. Plaintiff though does not allege how any alleged failure of oversight post January 6, 2021, contributed to his injuries purportedly caused by Officer Williams on January 6, 2024. As such, Plaintiff does not demonstrate a causal link between his injuries and any act or omission by the Speaker.

Additionally, the Court cannot redress Plaintiff's injuries with respect to Speaker Johnson. Plaintiff demands that the Court order the Speaker to open an "investigation [in]to the police brutality that occurred on January 6." Compl. (ECF No. 1) at Request for Relief ¶ D. The Court lacks authority to direct Congress to investigate. *See Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (no standing in action for writ of mandamus compelling Congress to act); *Liberation News Serv. v. Eastland*, 426 F.2d 1379, 1384 (2d Cir. 1970) ("[The] history demonstrates to us that, in enacting [§ 1361], Congress was thinking solely in terms of the executive branch."). And even if the Court could order such relief, a Congressional investigation of the conduct would not redress Plaintiff's alleged injuries that he suffered on January 6, 2021. As such, the Court cannot redress Plaintiff's request for relief as to Speaker Johnson.

In sum, Plaintiff fails to demonstrate standing. Therefore, the Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.

## II.    Any Common Law Tort Claims Lurking in Plaintiff's Complaint Fail.

A claim against a government official in their official capacity is a claim against the United States. Indeed, an official capacity suit is merely "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Equally clear, "the United States may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The doctrine of sovereign immunity provides that the Unites States can be sued only insofar as it has agreed to be sued; absent a waiver, sovereign immunity shields the federal government and its agencies from suit. *See Stoddard v. Wynn*, 68 F. Supp. 3d 104, 112 (D.D.C. 2014); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The government's consent to be sued may not be implied; it must be "unequivocally expressed." *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34 (1992). A waiver of immunity is strictly construed in favor of the sovereign. *See Orff v. United States*, 545 U.S. 596, 601–02 (2005). A plaintiff bears the burden of establishing that sovereign immunity has been abrogated and "must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss." *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006) (citing *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003)).

The Federal Tort Claims Act ("FTCA"), appears to be the only potentially relevant waiver of sovereign immunity here for Plaintiff's official capacity claims as it provides the "exclusive remedy" for tort actions in which a plaintiff seeks damages from federal government employees acting within the scope of their duties. *United States v. Smith*, 499 U.S. 160, 166 (1991). It too is the only applicable waiver for any common law tort claims against Officer Williams in his individual capacity as the United States has substituted itself under the Westfall Act for Officer Williams for any such claims. *See*, *e.g.*, *Plevnik v. Sullivan*, Civ. A. No. 23-0837 (CRC), 2023 WL 7279229, at *2 (D.D.C. Nov. 3, 2023) ("The Westfall Act requires substitution of the United States in place of a defendant federal employee where the Attorney General has certified that the

employee was 'acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" (quoting 28 U.S.C. § 2679(d)(1)).

Under the FTCA, Plaintiff plainly has no viable claims. That is, to the extent Plaintiff brings a common law tort claim, any such claim would fail because Plaintiff failed to exhaust administrative remedies. The United States has waived its immunity in certain tort actions under the FTCA, but plaintiffs must first file their claims with the appropriate federal agency. *See Welsh v. Hagler*, 83 F. Supp. 3d 212, 223 (D.D.C. 2015). "[U]nder the FTCA, plaintiffs must exhaust administrative remedies, which 'occurs once a claimant has presented the appropriate federal agency with a claim describing the alleged injury with particularity and setting forth a sum certain of damages, and the agency has: (1) denied the claim in writing or (2) failed to provide a final disposition within six months of the claim's filing.'" *Id.* (quoting *Cureton v. U.S. Marshal Serv.*, 322 F. Supp. 2d 23, 27 (D.D.C. 2004)) (cleaned up).

Here, Plaintiff has not presented any claim to the U.S. Capitol Police. Decl. of James Joyce (Dec. 9, 2024) ¶ 4 (attached hereto as Ex. A). Nor has Plaintiff submitted any claim to the U.S. House of Representatives. Decl. of Brooks Hanner (Dec. 9, 2024) ¶ 4 (attached hereto as Ex. B). As such, Plaintiff has not exhausted his administrative remedies for any common law tort claims. Thus, to the extent Plaintiff alleges any common law torts, those claims would be barred for failure to exhaust.

### III. The Court Should Refrain from Creating a *Bivens* Remedy for Plaintiff's Claims, as the Claims Fail to Survive a Post-Egbert Analysis for Implied Remedies.

To the extent the Court considers Plaintiff to seek a *Bivens* remedy against Officer Williams in his individual capacity, any *Bivens* claims would fail. Unlike 42 U.S.C. § 1983, which statutorily provides for damages suits against state officers for constitutional violations, Congress never "create[d] an analogous statute for federal officials." *Ziglar v. Abbasi*, 582 U.S. 120, 130

(2017). "In [*Bivens*], the [Supreme] Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search [in his home] could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). After *Bivens*, "the Court twice again fashioned new causes of action under the Constitution—first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, *see Davis v. Passman*, 442 U.S. 228 (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980)." *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 582 U.S. at 131.

"Over the past 42 years," the Supreme Court has "declined 11 times to imply a similar cause of action for other alleged constitutional violations." *Egbert*, 142 S. Ct. at 1799–1800 (citing cases). This is because the *Bivens* trilogy of cases were decided during an "ancient regime" when "the Court assumed it to be a proper judicial function to 'provide such remedies as are necessary to make effective' a statute's purpose." *Abbasi*, 582 U.S. at 132 (citations omitted). The Court has now "come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power.'" *Egbert*, 142 S. Ct. at 1802 (quoting *Hernandez*, 140 S. Ct. at 741). If "called to decide *Bivens* today, [the Court] would decline to discover any implied causes of action in the Constitution." *Id.* at 1809. The Court has thus "emphasized that recognizing a cause of action under *Bivens* is 'a disfavored judicial activity,'" *id.* at 1803 (quoting *Abbasi*, 582 U.S. at 135), and is unavailable "in all but the most

unusual circumstances," *id.* at 1800.  This is because, "[a]t bottom, creating a cause of action is a legislative endeavor."  *Id.* at 1802.

*Egbert* signals a significant step forward in the Supreme Court's *Bivens* jurisprudence, particularly in the Fourth Amendment context at issue here.  Indeed, the *Egbert* Court declined to recognize such a remedy even though the allegations presented "a more conventional excessive-force claim, as in *Bivens*" itself.  *Id.* at 1805.  *Egbert* instructs that courts must ask two questions before deciding whether to recognize an implied remedy under *Bivens*.  First, courts ask if a case "presents 'a new *Bivens* context.'"  *Egbert*, 142 S. Ct. at 1803 (quoting *Abbasi*, 582 U.S. at 139).  Second, "if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Id.* (quoting *Abbasi*, 582 U.S. at 136).  *Egbert* itself applied a special factors analysis even though the plaintiff in *Egbert* was—not unlike Webster Bivens—"an American citizen who argue[d] [in part] that a federal law enforcement officer violated the Fourth Amendment in searching the curtilage of his home."  *Id.* at 1810 (Gorsuch, J., concurring).  While described separately, these "steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."  *Id.* at 1803.  This is not a high bar: "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy."  *Id.* (quoting *Hernandez*, 140 S. Ct. at 743).

That bar is easily eclipsed here.  Plaintiff's constitutional claims under the First and Fourth Amendments, arising during the riot at the U.S. Capitol on January 6, 2021, and the purported negligence of a U.S. Capitol Police Officer, all present a new context and category of defendants.  Plus, special factors, such as: multiple alternative remedial safeguards, including the FTCA and

the potential for criminal investigations; separation of powers concerns; and the societal and practical costs of recognizing an implied cause of action, counsel against this court extending *Bivens*.

A.   **Plaintiff's Claims Present a New *Bivens* Context.**

The circumstances of this case undoubtedly present a new *Bivens* context.  The Supreme Court's "understanding of a 'new context' is broad."  *Hernandez*, 140 S. Ct. at 743.  "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."  *Id*.  Indeed, "a context [is] 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by this Court,'" *id*. (quoting *Abbasi*, 582 U.S. at 140), or if it even just "involves a 'new category of defendants,'" *id*. (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).  The test is easy to meet.  Cases with "significant parallels to" *Bivens*, *Davis*, or *Carlson*, or presenting just a "modest extension" of one of them, are "still an extension" into a brand-new context.  *Abbasi*, 582 U.S. at 147 (listing seven non-exhaustive indicia for courts to consider).

Plaintiff's claims present a new context for at least three reasons.  First, U.S. Capitol Police is a "new category of defendants," *Malesko*, 534 U.S. at 68, as compared to the narcotics agents in *Bivens*, the congressman in *Davis*, or the prison officials in *Carlson*.  The Supreme Court never has approved of a *Bivens* remedy against U.S. Capitol Police.  Recently, the Supreme Court has twice expressly declined to extend *Bivens* in the last two years for excessive force claims against other federal law enforcement officials that were not at issue in *Bivens*.  *Hernandez*, 140 S. Ct. at 739–40 (refusing to extend *Bivens* to "new field" of excessive force claims against Border Patrol agent who fatally shot a teen boy who was "playing a game" at the border); *Egbert*, 142 S. Ct. at 1804 (refusing to extend *Bivens* to "new field" of excessive force claims against a Border Patrol agent who assaulted a U.S. citizen on his own property).  In *Egbert*, the Supreme Court said that

the Ninth Circuit properly "conceded" that the claims there arose in a new context simply because Agent Egbert was a Border Patrol agent. *Id.*; *see also Boule v. Egbert*, 998 F.3d 370, 387 (9th Cir. 2021).

Second, the claims here do not arise from a warrantless entry by narcotics officers who "manacled" a plaintiff in front of his family and searched his home "from stem to stern." *Bivens*, 403 U.S. at 389. They arise from events that unfolded during January 6, 2021, when individuals overwhelmed law enforcement officials and stormed the U.S. Capitol. As the Fifth Circuit has described, "[v]irtually everything" outside the specific facts of *Bivens, Davis*, and *Carlson* is a "new context." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020). Thus, after *Abbasi*, many courts have held that uses of force outside a home are a new *Bivens* context and declined to imply a *Bivens* remedy. *See also Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) ("It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'") (quoting *United States v. U.S. Dist. Ct.*, 407 U.S. 297, 313 (1972)). One court within this District has also found that "an arrest [occurring] outside the home" was "sufficient to distinguish this case from *Bivens*." *Robinson v. Pilgram*, Civ. A. No. 20 -2965 (GMH), 2021 WL 5987016, at *12 (D.D.C. Dec. 17, 2021), *aff'd,* No. 22-5001, 2022 WL 3009621 (D.C. Cir. July 28, 2022) ("Similarly, appellant cannot seek damages from appellees in their individual capacities because he has no implied cause of action in the present context under [*Bivens*]." (citing *Egbert*, 142 S. Ct. at 1803)).

Third, although the Court in *Egbert* acknowledged certain factual similarities to *Bivens*, it considered those similarities to be "superficial" and "not enough to support the judicial creation of a cause of action." *Egbert*, 142 S. Ct. at 1805. Thus, mandating a special-factors inquiry, showing that the Judiciary is "comparatively ill-suited to decide whether a damages remedy . . . is

appropriate." *Id.* As discussed below, Plaintiff's claims implicate "potential special factors that previous *Bivens* cases did not consider," which is alone enough to constitute a "new context." *Id.* at 1803; *see also id.* at 1805 (noting that *Bivens* itself "never meaningfully undertook" a "special-factors inquiry"). Those special factors include, *inter alia*, concerns with separation of powers and deference towards Congress "[in] creat[ing] a damages action," and potential "systemwide consequences of recognizing a cause of action under Bivens." *Id.* at 1803–05. In sum, regardless of any "parallel circumstances" between Plaintiff's allegations and those in *Bivens, id.* at 1805, there are multiple distinctions, any one of which is meaningful enough to satisfy the low bar needed to meet the "new context" inquiry. *See Abbasi*, 582 U.S. at 149 ("Given this Court's expressed caution about extending the *Bivens* remedy, . . . the new-context inquiry is easily satisfied.").

In sum, Plaintiff's claims "involve[] different conduct by different officers from a different agency," *Cantu v. Moody*, 933 F.3d 414, 423 (9th Cir. 2019), and implicate special factors that *Bivens* never considered. There is no question here that the "new-context inquiry is easily satisfied." *Abbasi*, 582 U.S. at 149.

### B.  Special Factors Counsel Hesitation in Implying a *Bivens* Remedy Here.

When "a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Abbasi*, 582 U.S. at 136). The Supreme Court has "not attempted to 'create an exhaustive list' of factors that may provide a reason not to extend *Bivens*, but [has] explained that 'central to [this] analysis' are 'separation-of-powers principles.'" *Hernandez*, 140 S. Ct. at 743 (quoting *Abbasi*, 582 U.S. at 135). "[I]t is a significant step under separation-of-powers principles for a court to . . . create and enforce a cause of action for damages against federal officials." *Abbasi*, 582 U.S. at 133. "The question is 'who should decide' whether to provide for a damages remedy, Congress

or the courts?" *Id.* at 135 (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)).  "If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case—no *Bivens* action may lie." *Egbert*, 142 S. Ct. at 1803.

Here, as more fully discussed below, there are a host of special factors counseling against extending *Bivens*, including Congress' predominant place in the field of creating an action for damages; the potential for criminal prosecution; and the substantial social costs and practical concerns that would result from extending *Bivens*.  "[E]ven a single sound reason to defer to Congress" is sufficient for a court to refrain from extending *Bivens, Egbert*, 142 S. Ct. at 1803, but "[t]aken together," *Chappell v. Wallace*, 462 U.S. 296, 304 (1983), this multitude of factors forcefully dictate that no *Bivens* action may lie in this case.

This inquiry also includes evaluating the availability of "an alternative remedial structure," which "alone may limit the power of courts to infer a new *Bivens* cause of action." *Abbasi* 582 U.S. at 137.  "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Abbasi*, 582 U.S. at 137).  "Importantly, the relevant question [as to the alternative remedial structure] is not whether a *Bivens* action would 'disrup[t]' a remedial scheme, or whether the court 'should provide for a wrong that would otherwise go unredressed[.]'" *Id.* (citations omitted).  "Nor does it matter that 'existing remedies do not provide complete relief.'" *Id.* (quoting *Bush*, 462 U.S. at 388); *accord Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability."); *Liff v. Off. of Inspector Gen. for Dep't of Lab.*, 881 F.3d 912, 921 (D.C. Cir. 2018) ("The question is whether alternative remedies exist, not whether they cover the full breadth of harm that a would-be *Bivens* plaintiff alleges.").  A "court

must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies 'should be augmented by the creation of a new judicial remedy.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Bush*, 462 U.S. at 388).

As in *Egbert*, an internal grievance process, is also attendant here, which "independently" forecloses extending *Bivens*. *Egbert*, 142 S. Ct. at 1806. Moreover, there are other additional alternative processes that exist in this case, including the FTCA and state tort remedies; and the potential for criminal prosecution. "[E]ven a single sound reason to defer to Congress" is sufficient for a court to refrain from extending *Bivens*, *Egbert*, 142 S. Ct. at 1803, but "[t]aken together," *Chappell v. Wallace*, 462 U.S. 296, 304 (1983), this multitude of factors forcefully dictate that no *Bivens* action may lie in this case.

1.    Alternative Remedial Safeguards are Available to Plaintiff

*Egbert* reiterated that courts may "not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Abbasi*, 582 U.S. at 137). If any such structure is in place, "that alone" is sufficient "to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* (quotations omitted). Critically, *Egbert* emphasized that "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts" and thus an alternative remedy need not be "'as effective as in an individual damages remedy.'" *Id.* (quoting *Bush*, 462 U.S. at 372). In this case, as in *Egbert*, the existence of "alternative remedies for aggrieved parties in [Plaintiffs'] position" is enough to "independently foreclose a *Bivens* action here." *Id.* at 1806. Several alternative structures were and are available to Plaintiff.

a.    *Internal Grievance and Discipline Procedures*

The Supreme Court has twice held that an alternative remedy includes the ability to file a complaint through an internal grievance process. *Malesko*, 534 U.S. at 74 (holding a Bureau of

Prison's Administrative Remedy Program is an alternative remedy); *Egbert*, 142 S. Ct. at 1806–07 (holding a Department of Homeland Security grievance process is an alternative remedy). That process can, by itself, "independently foreclose a *Bivens* action." *Id*. at 1806. As *Egbert* explained, an agency "is statutorily obligated to 'control, direc[t], and supervis[e] . . . all employees,'" *id.* (quoting 8 U.S.C. § 1103(a)(2)), and by regulation, Customs and Border Protection in that case "must investigate '[a]lleged violations of the standards for enforcement activities' and accept grievances from '[a]ny persons wishing to lodge a complaint,'" *id.* (quoting 8 C.F.R. §§ 287.10(a)–(b)). *Egbert* determined that these statutes and regulations afforded individuals complaining of excessive force by border patrol officers an alternative "safeguard[]" that "secure[s] adequate deterrence." *Id.* at 1807.

Officer Williams is subject to similar statutory and regulatory requirements relied on by *Egbert* to foreclose a *Bivens* remedy, and this same grievance procedure is available to Plaintiff. Congress has authorized the U.S. Capitol Police Inspector General to investigate and report abuses by U.S. Capitol Police officials. *See* 2 U.S.C. § 1909. Those aggrieved by U.S. Capitol Police officials conduct may file a complaint. *See* U.S. Capitol Police, *File a Complaint* (available at https://www.uscp.gov/contact/complaint-report) (last visited Dec. 9, 2024). "Once a complaint is received, it will be reviewed by the [Office of Professional Responsibility] and assigned an investigator as appropriate. The investigator will conduct a thorough investigation based on the proven facts by interviewing involved parties, collecting documents, and preparing a report summarizing the investigation." *See* U.S. Capitol Police, *Complaint Process & Procedures* (available at https://www.uscp.gov/sites/evo-subsites/www.uscp.gov/files/wysiwyg_uploaded/USCP%20Complaint%20Process%20and%20Procedures%20Pamphlet%202021.pdf) (last visited Dec. 9, 2024). More broadly, the Inspector General is statutorily required to "report

expeditiously to the Attorney General whenever the Inspector General has reasonable grounds to believe there has been a violation of Federal criminal law." 5 U.S.C. app. 3 § 4(d); *see* 2 U.S.C. § 1909(c)(1); *see also Abbasi*, 582 U.S. at 144 (acknowledging inspector general investigation into the area at issue counseled against *Bivens* remedy).

Whether Plaintiff availed himself of this procedure or not is irrelevant to the special factors inquiry because it is the "existence of alternative remedies [that] usually precludes a court from authorizing a *Bivens* action." *Abbasi*, 582 U.S. at 148. Indeed, *Egbert* instructs that even an allegedly "inadequate" grievance process can "independent[ly]" foreclose *Bivens* relief from a federal law enforcement officer, and even for an excessive force claim. *Egbert*, 142 S. Ct. at 1806–07. That was because the relevant "focus is whether the Government has put in place safeguards to prevent constitutional violations from recurring." *Id.* at 1806 (quotations omitted). Here, as in *Egbert*, such safeguards plainly exist, and this court should resist the temptation to think that it "is better equipped" than Congress to take the "most unusual" step of deciding that this safeguard "should be augmented by the creation of a new" *Bivens* remedy. *Id.* at 1800, 1804. Because Plaintiff has available to him the alternative processes as the plaintiff in *Egbert* did, the Court should similarly refuse to extend *Bivens* to their claims.

### b.    The FTCA and State Tort Law Remedies

Plaintiff has available to him yet another alternative remedy, through which he can seek damages: state tort suits and the FTCA, which is "the exclusive remedy for most claims against Government employees arising out of their official conduct." *Hui v. Castaneda*, 559 U. S. 799, 806 (2010). Although in 1980, the Supreme Court noted that the FTCA did not by itself displace a *Bivens* action for an inmate's denial of medical care, *Carlson*, 446 U.S. at 23, it has more recently said that the availability of state tort law can provide an "alternative means for relief" counseling against judicial implication of a damages remedy, *Abbasi*, 582 U.S. at 137 (citing *Malesko*, 534

U.S. at 73–74, and *Minneci v. Pollard*, 565 U.S. 118, 127–30 (2012)).  Thus, after *Abbasi*, courts across the country have found the availability of potential FTCA relief to be among the factors that can militate against extending *Bivens* in a variety of contexts, including for excessive force claims. *See Oliva*, 973 F.3d at 444; *Edwards v. Gizzi*, Civ. A. No. 20-7371, 2022 WL 309393, at *9 (S.D.N.Y. Feb. 2, 2022) (collecting cases where courts found that the FTCA was an alternative remedy that counsels against extending *Bivens*); *Ohome v. United States*, Civ. A. No. 21-0368, 2021 WL 5771147, at *7 (N.D. Ga. Dec. 6, 2021) (declining a *Bivens* remedy for an airport traveler's excessive force claim against a customs officer who tackled him onto a baggage carousel in part because "[a]lthough the FTCA is not a substitute for a *Bivens* action, it is still an effective and available remedy to be considered with other special factors"); *Oliveras v. Basile*, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020) (collecting cases and noting "that *Carlson*'s analysis of th[is] issue may not have survived [*Abbasi*]"); *see also K.O. ex rel. E.O. v. Sessions*, No. 20-5255, 2022 WL 3008025, at *1 (D.C. Cir. Jul. 29, 2022) (Silberman, J., concurring) (stating that the alternative remedy under the FTCA should have been an additional reason to deny a *Bivens* action, and urging that the Supreme Court overrule *Bivens* as an "egregious example of the Supreme Court of the United States acting like a common law court rather than an Article III court").  The Court should join the growing chorus of post-*Abbasi* cases, and find that the FTCA and state tort law remedies are among the many reasons here to decline extending *Bivens*.

### 2.    Congressional Activity Militates against Crafting a *Bivens* Remedy

In 1871, Congress passed 42 U.S.C. § 1983, authorizing a damages remedy against state officers for alleged constitutional violations.  Over the next 150 years, Congress amended that statute twice, P.L. No. 104-317, § 309, 110 Stat. 3847, 3853 (1996); P.L. No. 96-170, 93 Stat. 1284 (1979), but has never expanded its scope to encompass federal actors. *Abbasi*, 582 U.S. at 136. This has not been due to oversight or inadvertence.  While in 18 U.S.C. § 242—Section 1983's

criminal counterpart—Congress deliberately chose to make criminal liability for constitutional violations apply equally to both state and federal officers, Congress has repeatedly considered, but failed to enact, a similar statutory provision in the civil liability context.  *See*, *e.g.*, S. 3415, 117th Cong. (2021) (proposing amendment to § 1983 to make United States liable in damages for constitutional violations by federal law enforcement officers); S. 3343, 117th Cong. (2021) (proposing "*Bivens* Act" to similarly amend § 1983 to provide cause of action against federal officers for constitutional torts); S. 2103, 117th Cong. (2021) (proposing amendment to § 1983 to allow individual-capacity suits against federal law enforcement); H.R. 7213, 116th Cong. (2020) (proposing "*Bivens* Act" to provide statutory damages remedy against federal officials for constitutional violations); *see also* Cornelia T.L. Pillard, Taking Fiction Seriously: The Strange Results of Public Officials' Individual Liability Under *Bivens*, 88 Geo. L.J. 65, 98 (1999) (noting that from 1973 to 1985 Congress debated but failed to pass 21 proposals to make United States liable for certain constitutional violations by federal officials).

Additionally, Congress has paid close attention to the potential for federal law enforcement to use excessive force, and yet has never approved of a *Bivens* remedy against such officers.  As enacted, the FTCA did not waive the United States' sovereign immunity for assault and battery claims. 28 U.S.C. § 2680(h).  But in 1974, Congress amended the FTCA "in the wake of *Bivens*," creating its so-called law enforcement proviso and waiving immunity for certain intentional tort claims. *Gray v. Bell*, 712 F.2d 490, 507 (D.C. Cir. 1983).  But Congress did not then, nor in the decades since, ever approve of federal officers being personally liable for alleged constitutional violations. *See supra; see also Snowden v. Henning*, Civ. A. No. 19-1322, 2021 WL 806724, at *5 (S.D. Ill. Mar. 3, 2021) ("By enacting the law enforcement proviso, Congress signaled that it does not want a damages remedy against individual federal agents.").  That Congress has repeatedly

tried, unsuccessfully, to enact a statutory *Bivens* remedy "does not compel [courts] to step into [Congress's] shoes." *Hernandez*, 140 S. Ct. at 750.

Courts presume that Congress acts purposefully in deciding whether to enact legislation. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62 (2002) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." (internal quotation marks and citations omitted)); *Fed. Express Corp. v. Dep't of Com.*, 39 F.4th 756, 768 (D.C. Cir. 2022) ("[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, courts presume that Congress knew what it was doing and meant for the omission to have significance." (internal quotation marks and citations omitted)). "Because Congress has long been on notice that the Supreme Court is disinclined to extend *Bivens* to new contexts, its 'failure to provide a damages remedy' here suggests 'more than mere oversight.'" *Cantu*, 933 F.3d at 423 (quoting *Abbasi*, 582 U.S. at 143). As mentioned above, Congress has created an avenue for Plaintiff to recover damages for federal officers' torts. Yet Congress has gone decades without approving a *Bivens*-type remedy for claims against individual federal law enforcement of the sort provided against state and local officers under 42 U.S.C. § 1983. This Congressional action and inaction underscore the separation of powers consequences here of a court acting where Congress has not. *Oliva*, 973 F.3d at 444 (noting courts "must consider what Congress has done and . . . left undone"). That should foreclose the court implying a *Bivens* remedy for Plaintiff's claims.

### 3. The Societal and Practical Costs of Implying a New *Bivens* Action

Before courts take the disfavored and most unusual step of extending *Bivens*, they must evaluate "policy considerations . . . at least as broad as the range . . . a legislature would consider." *Egbert*, 142 S. Ct. at 1802 (citing *Bivens*, 403 U.S. at 407 (Harlan, J. concurring)). "Congress is 'far more competent than the Judiciary' to weigh such policy considerations." *Id.* at 1803. "And

the Judiciary's authority to do so at all is, at best, uncertain." *Id.* Nonetheless, if a court engages in this "unenviable task," which it must do before creating a new *Bivens* remedy, it must consider "economic and governmental concerns," "administrative costs," and the "impact on governmental operations systemwide." *Id.* at 1802 (quoting *Abbasi* 582 U.S. at 143).

Here, extending personal liability to this class of cases "entail[s] substantial social costs, including the risk that fear of . . . litigation will unduly inhibit officials in the discharge of their duties.'" *Egbert*, 142 S. Ct. at 1807 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). This "chilling effect on law enforcement" is reason enough to decline extending *Bivens*. *Young v. City of Council Bluffs*, 569 F. Supp. 3d 885, 895–96 (S.D. Iowa 2021). But such concerns are even more acute in a case like this, which often involve split-second decisions made after responding to calls for backup from fellow officers due to the overwhelming presence of the mob at the U.S. Capitol on January 6, 2021. Thus, while imposing personal liability may promote some interests, it also comes with substantial costs, not just for an individual officer, but for "citizens who depend on the vigorous enforcement of federal law." *Loumiet v. United States*, 948 F.3d 376, 381 (D.C. Cir. 2020) ("The Constitution itself is silent on how to balance these competing considerations . . . and judges are not well-suited to do so."). For these reasons, the Supreme Court have said that Congress is "in a far better position than a court to evaluate the impact of a new species of litigation" against those who act on the public's behalf, *Bush*, 462 U.S. at 389, and "can tailor any remedy to the problem perceived," *Wilkie v. Robbins*, 551 U.S. 537, 562 (2007).

The many factors catalogued above supply far more than just "any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1805. The decision to authorize a damages remedy in this context rests with Congress, not the courts.

In sum, the Court should refrain from creating new *Bivens* remedies. As such, Plaintiff's constitutional claims against Officer Williams fail to state a claim upon which relief may be granted.[1]

### IV.    The Court Dismiss Plaintiff's Complaint Because Defendants Are Immune.

### A.    Officer Williams Is Entitled to Qualified Immunity for Any *Bivens* Claims.

The doctrine of qualified immunity shields "government officials 'from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stevenson v. District of Columbia*, 639 F. Supp. 3d 117, 129 (D.D.C. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To analyze the application of qualified immunity courts ask if: "(1) [officials] violated a federal statutory or constitutional right, and (2) the unlawfulness of their was "clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018); *see also Pearson*, 555 U.S. at 223 (rejecting *Saucier's* rigid requirement that establishment of a right must be established before clearly established can be analyzed).

Qualified immunity "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Generally, this means that "in order of

---

[1]    Plaintiff does not allege a constitutional violation by Speaker Johnson. Compl. (ECF No. 1) at Request for Relief. Nor is Plaintiff suing Speaker Johnson in his individual capacity, and the undersigned do not represent the Speaker in his individual capacity. *Id*., at Caption. Regardless, to the extent the Court considers Plaintiff to have alleged a *Bivens* cause of action against Speaker Johnson any such claim would equally fail for the same reasons and because the Speaker is entitled to absolute immunity.

the law to be clearly established, there must be a Supreme Court or [] Circuit decision on point, or clearly established weight of authority from other courts must have found the law to be as plaintiff maintains." *Doe v. District of Columbia*, 796 F.3d 96, 104 (D.C. Cir. 2015). The inquiry "must be undertaken in light of the specific context of the case, not as broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "The proponent of a purported right has the 'burden to show that the particular right in question was clearly established' for qualified-immunity purposes." *Daugherty v. Sheer*, 891 F.3d 386, 390 (D.C. Cir. 2018) (quoting *Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015)).

Plaintiff does not meet his burden to show that any violation of his rights was "clearly established," much less "beyond debate." Plaintiff cannot point to a case or other clearly established weight of authority in the context of the events at the Capitol on January 6, 2021, where after an individual attempts to bypass U.S. Capitol Police and climbs the outside balustrade in an unlawful attempt to enter the Capitol Building, that an officers' attempt to remove him from the Capitol building was a violation of his Constitutional rights. Courts in the District of Columbia have not addressed how much weight to give protecting the Vice President, members of Congress and their staffs, and the Capitol, and ensuring the certification of a presidential election in justifying actions as reasonable. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (examination of excessive force claims "requires careful attention to the facts and circumstances of each particular case"); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

As such, to the extent Plaintiff could prove Officer Williams caused his injuries, Officer Williams would be entitled to qualified immunity.

**B.      Speaker Johnson Is Entitled to Absolute Immunity for Any Claims Based on His Alleged Failure to Investigate.**

As an initial matter, the House Rules delegate the House's investigative power to its Committees, not to the Speaker.  *See generally* Rules of the U.S. House of Representatives, Rule I (2023) (specifying the Speaker's authority, which does not include the power to initiate Committee investigations); Rule X (laying out the oversight jurisdiction and investigative authority of House Committees).  Indeed, the House Rules empower House Committees to issue subpoenas and hold hearings.  *Id.* at Rule XI(2)(m)(1).  Thus, the investigation Plaintiff is demanding would be conducted by a House Committee, not Speaker Johnson, and he has named the wrong party to issue his requested relief.  But even if that were not the case or Plaintiff were to amend his complaint to add the relevant Committees, Speech or Debate Clause immunity would bar any claim arising from such alleged conduct.

The Speech or Debate Clause provides, "The Senators and Representatives . . . for any Speech or Debate in either House . . . shall not be questioned in any other place." U.S. Const. art. I, § 6, cl. 1.  The Clause functions "to protect the individual legislator, not simply for his own sake but to preserve the independence and thereby the integrity of the legislative process." *United States v. Brewster*, 408 U.S. 501, 524 (1972).  It provides absolute immunity from civil suit. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975).

It is "long settled" that the Clause's protections apply "not just to speech and debate in the literal sense, but to all 'legislative acts.'"  *McCarthy v. Pelosi*, 5 F.4th 34, 38–39 (D.C. Cir. 2021) at 38-39 (quoting *Doe v. McMillan*, 412 U.S. 306, 311–12 (1973)).  And given the fundamental role that investigations play in Congressional business, it's unsurprising that the means Congress uses to gather information are treated as protected legislative acts.  *See*, *e.g.*, *Eastland,* 421 U.S. at 504 (noting "[t]he power to investigate … plainly falls within th[e] definition" of legislative act);

*McMillan*, 412 U.S. at 313 ("The acts of authorizing an investigation pursuant to which the subject materials were gathered, holding hearings where the materials were presented, preparing a report where they were reproduced, and authorizing the publication and distribution of that report were all [protected legislative acts]."); *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 992–93 (D.C. Cir. 2021) (holding that committee subpoenas and corresponding responses were protected legislative acts). Similarly, whether a Member of Congress or a Congressional Committee decides to take specific investigative steps is a core legislative function protected by the Speech or Debate Clause. *See, e.g.*, *Eastland*, 421 U.S. at 507.

In this case, both this Congress and the last Congress have conducted investigations related to the events of January 6, 2021. *See, e.g.*, H. Comm. on House Administration Subcommittee on Oversight, 118th Cong., *Initial Findings Report: The Failures and Politicization of the January 6th Select Committee and the Activities on and Leading up to January 6, 2021* (Mar. 11, 2024), available at https://cha.house.gov/_cache/files/d/9/d96ba6ce-03fb-4fc8-a4a7-5b5daf19d064/4F510144C1F427873D3298D955C8E19F.initial-findings-report.pdf. While Plaintiff may be dissatisfied with the contours of those investigations, decisions about how to investigate that topic are legislative acts. And just as the Speech or Debate Clause protects a Member from a lawsuit challenging his or her decision to pursue a particular investigative avenue, so too does the Clause protect a Member from a lawsuit objecting to his or her decision not to pursue a particular investigative avenue. This is because those decisions involve legislative acts. Consequently, Plaintiff's request that the Speaker "immediately begin an investigation of the police brutality that occurred on January 6," Compl. (ECF No. 1) at Request for Relief ¶ C, clearly relates to a legislative act, which entitles Speaker Johnson to absolute immunity.

Moreover, granting Plaintiff's requested relief and not extending Speech or Debate immunity would significantly deviate from the separation of powers principles that underlie American governance. If courts were able to order Congress to initiate a specific investigation or to take specific investigative steps, that would allow the courts to wield the powers expressly granted to Congress. *See* U.S. Const. art. I, §§ 3, 7, 8. One such admittedly extreme example of allowing Courts to order Congress to act when they would have not otherwise have is allowing the requested relief of impeaching the President of the United States, which the Supreme Court has cautioned against. *Nixon v. United States*, 506 U.S. 224, 234–35 (1993) ("[J]udicial review would be inconsistent with the framers' insistence that our system be one of checks and balances. In our constitutional system, impeachment as designed to be the only check on the Judicial Branch by the Legislature. . . Judicial involvement in the impeachment proceedings even if only for purpose of judicial review, is counterintuitive because it would eviscerate the 'important constitutional check' placed on the Judiciary by the framers.").

Thus, Speaker Johnson in his official capacity is entitled to absolute immunity under the Speech or Debate Clause for his purported failure to investigate Officer Williams' conduct, foreclosing any claim based on that conduct.

*    *    *

## CONCLUSION

For the reasons discussed above, the Court should dismiss Plaintiff's Complaint.

Dated:  December 9, 2024           Respectfully submitted,
        Washington, DC

                                   MATTHEW M. GRAVES, D.C. Bar #481052
                                   United States Attorney

                                   BRIAN P. HUDAK
                                   Chief, Civil Division

                                   By:            */s/ Joseph F. Carilli, Jr.*
                                       JOSEPH F. CARILLI, JR.
                                       N.H. Bar No. 15311
                                       Assistant United States Attorney
                                       601 D Street, NW
                                       Washington, DC 20530
                                       (202) 252-2525

                                   *Attorneys for the United States*

26